**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **NO. CR 05-0720 RB** |
| | ) | |
| **ANDRES CARMONA-MIRANDA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant's (Carmona's) Motion to Dismiss Indictment, filed on July 26, 2005. The Government filed a response in opposition to this motion. The Court heard oral arguments on September 8, 2005. The parties were granted additional time to supplement the record. The Government submitted additional materials on October 4, 2005. Carmona submitted additional materials on October 17, 2005. Having considered the record, arguments of counsel, and being otherwise fully advised, I find that the motion should be denied.

**I. Background.**

The indictment charges that Carmona was found in the United States on October 31, 2004, after removal on September 13, 2004, due to a prior aggravated felony conviction for delivery of a controlled substance. The government charged Carmona with reentry of deported alien previously convicted of an aggravated felony in violation of 8 U.S.C. § 1326(a)(1) and (2) and 8 U.S.C. § 1326(b)(1). Carmona moved to dismiss the indictment on the ground that the removal proceedings were fundamentally unfair.

**II. Facts.**

Carmona was born in Mexico on November 14, 1955. He entered the United States as a

legal permanent resident on June 28, 1968. On June 17, 1976, Carmona was charged with delivery of a controlled substance in Cook County, Illinois. On July 19, 1977, Carmona pleaded guilty while represented by counsel. Carmona was sentenced to six months work release and five years probation.

The record indicates that, on August 4, 1979, Carmona was arrested and charged with battery in Blue Island, Illinois. On April 12, 1990, Carmona was arrested and charged with child abandonment in Santa Fe County, New Mexico. On November 12, 1992, Carmona was arrested and charged with driving while intoxicated, careless driving, and leaving the scene of an accident in Santa Fe County, New Mexico. Carmona testified that he was convicted of delivery of heroin in Chicago, child abandonment in Santa Fe, and battery in 1979. Carmona testified to extenuating circumstances relating to the charges and convictions.

On December 31, 1992, Carmona submitted an application for naturalization. On February 26, 1996, the INS interviewed Carmona. The interviewer wrote notes on the application with red ink. The notes reflect that Carmona advised the interviewer that he had been charged with possession of a controlled substance in Chicago in 1976, battery in 1979, child abandonment in 1990, and that he had been arrested for domestic violence in Denver in 1993. Carmona testified that he told the interviewer about all of his criminal activity except for the driving while intoxicated charge. Carmona informed the interviewer that his address was 232 Hillcrest Drive, Stockbridge, Georgia.

On March 27, 1996, Carmona bought and moved into a house located at 8203 Saxon Court, Jonesboro, Georgia. On May 3, 1996, the INS granted Carmona's application for naturalization. On August 30, 1996, the INS scheduled Carmona for a naturalization ceremony on November 26, 1996. The INS sent notice of the ceremony to Carmona at the Jonesboro address. Carmona did not attend the naturalization ceremony. Carmona testified that, when he arrived for the naturalization ceremony,

INS officials asked for his green card. Carmona had left his green card at home. Carmona went home to retrieve his green card. By the time he returned to the ceremony, the ceremony had ended.

On May 29, 1998, the INS moved for reconsideration of the grant of naturalization. In support of its motion to reopen the case, the INS stated that it had erred in failing to consider Carmona's 1977 controlled substance conviction, and that Carmona had failed to advise the agency of his November 12, 1992 arrest for driving while intoxicated and a December 10, 1993 arrest for driving under the influence. The INS concluded that Carmona's application for naturalization was granted in error. On May 29, 1998, Carmona received the INS decision rescinding naturalization at his Jonesboro address. The decision warned Carmona that he had fifteen days to respond or the decision would become final.[1] Carmona took no further steps to regularize his status.

On October 19, 1999, the INS mailed a Form I-862 Notice to Appear to Carmona at his old address in Stockbridge. On February 17, 2000, the INS sent a notice to appear for removal proceedings on October 3, 2000 to Carmona at the Stockbridge address. Carmona did not receive notice of the October 3, 2000 removal proceedings. A removal hearing was held on October 3, 2000. Carmona was not present and he was ordered removed.

On July 1, 2004, Carmona was a passenger in a vehicle that was stopped for a traffic offense. The officer informed Carmona that he had been ordered removed on October 3, 2000. Carmona was detained and transferred to INS custody. On July 12, 2004, Carmona filed a motion to reopen the removal case and a motion to stay his removal. On August 16, 2004, an immigration judge denied the motion to reopen the removal hearing, and ordered Carmona removed. Carmona appealed.

---

[1] The decision stated that a Form I-862, Notice to Appear for Removal Proceedings, was attached to the decision. Carmona testified that he received the decision rescinding the grant of his application for naturalization, but that he did not receive notice of the removal proceedings.

Carmona was removed to Mexico on September 13, 2004.  On November 22, 2004, the Board of Immigration Appeals dismissed the appeal.  On October 31, 2004, Carmona was found in the United States.

Carmona has presented favorable circumstances in support of his motion to dismiss. Carmona's children were born in the United States.  Three of his children were born to his marriage to his former spouse, Donna Poucher.  These three children are: Andres, age 24; David, age 18; and Kionni, age 15.  Carmona's two youngest children, eleven-year-old twin boys, Benny and Nicky, were born to Carmona and Michele Peña.  In 2000, Carmona was awarded custody of the twins by the state district court in Doña Ana County, New Mexico.  Carmona's oldest son, Andres, has cared for the twins during Carmona's detention.  Carmona helped all of his children financially before his arrest.  Carmona's elderly parents are naturalized United States citizens and suffer from health ailments.

Carmona has a college degree and worked as a waste water technician.  Carmona was injured on the job and underwent hip replacement surgery.  After his physical problems disabled him from the waste water treatment field, Carmona returned to school and studied hospitality management.

## III. Discussion.

In order to succeed in a collateral attack of a deportation order, an alien must show that: (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings, at which the order was issued improperly, deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. §1326(d).  To show that the underlying proceeding was fundamentally unfair, Carmona has the burden to show a "reasonable likelihood that, but for the errors complained of, he would not have

4

been deported." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1208 (10th Cir. 2004) (en banc).

Assuming, without deciding, that Carmona can demonstrate that his removal proceeding was fundamentally unfair due to lack of notice, and that he properly exhausted any administrative remedies, Carmona has failed to meet his burden of proving prejudice. *Aguirre-Tello*, 353 F.3d at 1204. Carmona has felony convictions for delivering heroin, child abandonment, and battery. Carmona has presented some favorable circumstances in that he has lived in the United States for many years and his relatives are United States citizens. However, based on his criminal history, there is no reasonable likelihood that the Attorney General would have selected him for §212(c) relief from among the large number of eligible aliens. *See United States v. Sandoval*, 390 F.3d 1294, 1299 (10th Cir. 2004); *Aguirre-Tello*, 353 F.3d at 1209.

A review of Tenth Circuit case law is instructive. In *Aguirre-Tello*, the collateral attack was premised on the Immigration Judge's failure to advise Aguirre-Tello of his right to apply for discretionary relief. *Aguirre-Tello*, 353 F.3d at 1209. The Tenth Circuit held that, even if Aguirre-Tello had a constitutional right to be informed of his eligibility for discretionary relief, he failed to show prejudice. *See Aguirre-Tello*, 353 F.3d at 1210. The holding was based on two findings. *Aguirre-Tello*, 353 F.3d at 1209. First, the Tenth Circuit found no reasonable likelihood that Aguirre-Tello would have applied for a waiver even if the Immigration Judge had explained his right to do so. *Id.* Second, the Tenth Circuit found that Aguirre-Tello failed to show a reasonable likelihood that the waiver would have been granted had he applied. *Id.*

Aguirre-Tello had been convicted of attempted murder. *Aguirre-Tello*, 353 F.3d at 1209. Aguirre-Tello presented some favorable circumstances in that his parents were legal permanent residents, he had lived in the United States since he was four, and he had no prior criminal record.

5

*Id.* Considering the seriousness and temporal proximity of the conviction, the Tenth Circuit found

no reasonable likelihood that the Attorney General would have selected Aguirre-Tello for relief from

among the large number of eligible aliens. *Aguirre-Tello*, 353 F.3d at 1210.

In *Sandoval*, the collateral attack was based on the Immigration Judge's determination that

Sandoval was barred from applying for discretional relief. *Sandoval*, 390 F.3d at 1297. Sandoval

had two burglary convictions, one theft conviction, and at least three convictions for driving while

intoxicated. *Sandoval*, 390 F.3d at 1300. Sandoval also presented favorable factors: his son and

common-law wife were both permanent residents of the United States and he contributed to their

support while he was a resident. *Id.*

In determining that Sandoval had not demonstrated a reasonable likelihood that the Attorney

General would have selected him for relief, the Tenth Circuit looked to a Fifth Circuit decision and

factors developed by the BIA to determine whether a deportable alien was entitled to § 212(c) relief.

*Sandoval*, 390 F.3d at 1300. The Fifth Circuit decision, *United States v. Mendoza-Mata*, 322 F.3d

829 (5th Cir. 2003), concerned a defendant with convictions for cocaine possession, criminal trespass,

indecent exposure, theft, and driving with a suspended license, as well as charges of child recklessness

and criminal mischief. *Id.* Mendoza-Mata had family ties and a lengthy presence in the United States.

*Mendoza-Mata*, 322 F.3d at 833. Based on his extensive criminal history, the Fifth Circuit found no

reasonable likelihood that Mendoza-Mata would have been granted relief and rejected the collateral

attack. *Id.* The Tenth Circuit discussed and cited *Mendoza-Mata* with approval. *Sandoval*, 390 F.3d

at 1299-1300.

In *Sandoval*, the Tenth Circuit also looked to the BIA factors, which included the gravity of

the offense, evidence of rehabilitation or recidivism, duration of residence, family ties in the United

6

States, service in the armed forces, and evidence of bad character. *Sandoval*, 390 F.3d at 1300. The Tenth Circuit stated "[g]iven the sheer number of Mr. Sandoval's convictions, as well as the evident pattern of DWI and property offenses, we find it extremely difficult to believe that Mr. Sandoval's family connections would have outweighed his criminal record. Mr. Sandoval was not reasonably likely to receive a discretionary waiver of deportation."

Carmona's case is similar to *Aguirre-Tello* and *Sandoval*. Carmona was convicted of delivery of heroin, child abandonment, and battery. He was charged with driving while intoxicated and domestic violence. Carmona received notice that the INS rescinded its decision to grant his application for naturalization, yet he took no further steps to regularize his status. Carmona has not shown a reasonable likelihood that he would have applied for a waiver. Moreover, based on the number of convictions, as well as the fact the INS rescinded its decision, it is difficult to believe that Carmona's family ties and length of residency would have outweighed his criminal record. Carmona has not shown a reasonable likelihood that he would have applied for a discretionary waiver of removal or that such a waiver would have been granted.

Carmona argues that many applicants with comparable or worse criminal histories were granted relief from deportation through § 212(c) waivers, relying on *Kahn v. INS*, 36 F.3d 1412 (9th Cir. 1994); *Yepes-Prado v. INS*, 10 F.3d 1363 (9th Cir. 1993); *Guillen-Garcia v. INS*, 999 F.2d 199 (7th Cir. 1993); *Diaz-Resendez v. INS*, 960 F.2d 493 (5th Cir. 1992). These cases are at odds with the "reasonable likelihood" standard adopted by the Tenth Circuit en banc in *Aguirre-Tello*. *Id.*, 353 F.3d at 1208-1209. Thus, the cases cited by Carmona are not persuasive.

Moreover, none of the cases relied upon by Carmona involved the application of § 1326(d). The fact that other applicants obtained relief under § 212(c) is not helpful to Carmona because he has

not shown that he was similarly situated or that he would have obtained relief.  A similar argument was expressly rejected by the Tenth Circuit.  *See Sandoval*, 390 F.3d at 1299.  Although Carmona has presented sympathetic facts concerning his personal life, he has not shown a reasonable likelihood that he would have applied for a § 212(c) waiver or that the Attorney General would have granted him relief.

Under controlling Tenth Circuit authority, Carmona bears the burden of proving prejudice. *Aguirre-Tello*, 353 F.3d at 1204.  Carmona did not apply for a waiver when he received noticed that the INS rescinded the grant of naturalization. Carmona has a lengthy criminal record.  As Judge Lucero, joined by Judge Henry, wrote in his concurring opinion in *Aguirre-Tello*: "[T]here is less than a minuscule likelihood that he would have been granted a § 212(c) discretionary waiver.  Thus, he ultimately fails to establish the necessary prong of prejudice.  Absent prejudice, there can be no relief. . . ."  Similarly, Carmona has failed to show a reasonable likelihood that the Attorney General would have selected Carmona for §212(c) relief from among the large number of eligible aliens. *Aguirre-Tello*, 353 F.3d at 1209.  The motion to dismiss indictment is denied.

**IT IS SO ORDERED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**